Good morning, Your Honors. Janet Tong, Federal Defenders of San Diego, on behalf of Appellant Mr. Frank Bowman. I'd like to just keep my eye on the clock and try to save a minute or two for rebuttal. And I'd like to focus on the conspiracy issue. Mr. Bowman's prison sentence, 225 years of that prison sentence, arises from a conviction for conspiracy whose central element, the agreement to target a car, the, I'm sorry, the agreement to commit the target crime of vehicle theft, was not supported by sufficient evidence. And the State court's application of Jackson v. Virginia was objectively unreasonable here because there was not enough evidence that a rash, any rational injury could find proof beyond, proof of guilt beyond a reasonable doubt. What's my standard of review? The review is de novo in this case. Well, it isn't de novo in trying to determine what to do here, is it? I mean, I've got a jury who found this guy guilty. I'm sorry, Your Honor. I thought you were asking what review, what your level of review of the district court decision is. No, no. I'm talking about this, if I'm going to overturn this jury conviction based on some AEDPA standard, where I have to find. Your Honor, the AEDPA standard is that there is a, that, well, I'm sorry, there's actually two levels of review here. Don't I really have to say, my big question is whether after viewing the evidence in the light most favorable to the prosecution, any trier of fact would have found that the essential elements of the crime were not proven beyond a reasonable doubt. That's correct, Your Honor. Isn't that what I've got to find? That's correct, Your Honor. And that's what is present in this case. Well, if I look at your evidence and I find that the Richland property was the repository for stolen vehicles, that your client met with Grubbaugh in 1995, again frequenting the property as early as August 96, Grubbaugh stole vehicles and delivered them to the property. Your client worked on them and painted them. The shed where the tools and material were used concealed the I.D. were kept is where he was. The defendant was driving a stolen vehicle. The defendant concealed his I.D. from the police and tried to evade the police. The defendant found next to the stolen vehicles parts, weapons, and tools. And the alteration of the V.I.N.s was more than necessary to show intent to deprive. Then how do I get to your argument? I can answer that question, Your Honor. Every single piece of evidence that Your Honor just listed goes to show that Mr. Bowman was guilty of operating a chop shop. That's a conviction we're not contesting. And guilty of driving that 1972 Ford F-250. That's another conviction that we're not contesting. And guilty of changing these vehicles on this property, perhaps, after they were stolen. What do you do when the defendant met with Grubbaugh? He began then frequenting the property that Grubbaugh stole the vehicles that he and your client then worked on them and painted them. Every single piece of information, every single piece of evidence, Your Honor, goes to something that has happened after the completion of the target offense of a conspiracy. Your Honor, the State charged a conspiracy to commit vehicle theft, not a conspiracy to operate a chop shop. And I think that is the distinguishing feature. And State law unambiguously says that conspiracy is not an abstract crime without reference to any target crime. It is a crime that in which the State has to show that there was an agreement to do a specific other crime. Why can't the evidence go to both? He could have an intent to operate a chop shop, but he can also be part of a ring to bring in stolen cars. And much of the stuff that he does to operate the chop shop can also support the theft operation. You're correct, Your Honor. It is possible for evidence to serve that dual purpose. This evidence that is present here does not serve that purpose because it all occurred, it all shows activity that occurred after the completion of the target offense, the vehicle theft. The prosecutor even said in this in-State court, made the point, and he said the crime was completed by the time these cars made it to the property. This is a completed offense. In California State law, there's California State cases, I would cite, Your Honors, to the Brown case where the defendant was found with his hands in the cookie jar, so to speak. He was involved with robbery proceeds. He was found to have taken part in divvying them up. But he was convicted of a conspiracy to commit the robbery. And the State court said, no, that evidence can't stand, that conviction can't stand because the evidence goes to show involvement after the target crime of the charged conspiracy was already completed. And, Your Honors, I would also direct your attention to the Zoffel case, which is an old case where the defendant was convicted of a conspiracy to commit abortion. In that case, the defendant was a nurse, and she was found in very incriminating circumstances, similar to this situation, where she was found in the scene of the crime, but after the crime had occurred. She was right outside. What about the evidence about the meeting? Meeting was in 1995. That's correct. And the evidence shows that Mr. Bowman knew Mr. Grubaugh. He was friends with Mr. Grubaugh, and he came to visit him on this property that was Mr. Grubaugh's home. That's, you know, I can't fathom how that alone would stand as evidence that he had agreed to commit this crime of stealing vehicles where there's no evidence that anybody made such an agreement at all. Well, aren't you just arguing the weight of the evidence then? No, Your Honor. Because all we're trying to do, again, given the standard of review, is we're looking at all the facts in the record which would suggest what has been found by the jury, because we have to say they're right, unless we can say there are no facts in there that would lead to where they went. Well, Your Honor, I would direct your attention to this Court's decision in Golden v. Hayes, which says the State can't define an element out of existence. Sure, that one piece of information might be enough when it was added to a bunch of other evidence demonstrating that an affirmative agreement did exist, but that other evidence isn't there. And Golden v. Hayes says that each element has to actually be proven and that this Court can't go and make — this Court can't just impute an implicit finding as a fact by the State or by the jury, Your Honor. Let's see. I'm living with — or A is living with B in a house, and B goes out every other night and he grabs people off the street and he drags them into the house, kicking and screaming. And I beat them up and robbed them, and I let them go. And this happens today, happens tomorrow, happens three days from now. B goes out. He drags these people in off the street, kicking and screaming. Prosecution. I'm prosecuted for kidnapping, robbery, and assault. I understand your theory. You can't prosecute me for kidnapping because there's no proof. There's no proof that I knew he was going to go out and kidnap these people. The fact that he dragged them in off the street is beside the point. I didn't know he was going to do that. And the kidnapping was complete once he grabbed them. Is that your theory? No, Your Honor. That you couldn't prosecute me for the kidnap. Is that right? Your Honor, the State could prosecute you for whatever the State would like to prosecute you for, but with no more evidence. I'm giving you all the facts we know. Don't give me any new facts. Just take that. Could I be prosecuted for kidnapping? In your view. You could be prosecuted, but not convicted on that evidence alone. That's what I said. You're saying I couldn't be convicted of it. The fact that I'm regularly operating with this person and watching these things coming to light, I can't be found guilty of the conspiracy to kidnap people, bring them into the house and rob them, because you haven't proved that I agreed that he should be kidnapping people on the street. That's your theory, correct? If there's no evidence other than what you demonstrated. I said there's no more evidence.  Is that right? Yes, Your Honor. That is correct. And you could be convicted of conspiracy to rob those people, conspiracy to beat them up. You could perhaps be prosecuted for, you know, aiding and abetting. I understand. There are other convictions that are available here. I'm not saying Mr. Bowman is not going to walk away scot-free, even if I went on every single claim in this appeal. He's clearly been guilty. And my point is. What if I change the facts of Judge Fernandez's hypothetical and then say, but then every day you are seen taking the clothing and the wallet and the possessions of those people and selling them. So the next morning you are out selling the possessions. Can you then be convicted of conspiracy to kidnap them to begin with? No, Your Honor. I'll tell you why not. It's California state law. There's a case on point now. I would direct Your Honor's attention to the Samargin case, People v. Samargin, where the defendant in that case was counterfeiting racetrack tickets of some sort. And this is the. I'm glad Your Honor has brought up this hypothetical because it shows what happens when there's a crime or multiple crimes that are being committed as part of potentially a black market activity. And in that case, the defendant was committed, was convicted of conspiracy with people who bought those tickets later on after he counterfeited them, later on down the vertical axis of that black market activity. And the California court said, no, look, that's activity that he doesn't necessarily have any particular interest in. But all these people were coming and buying, buying racetrack tickets and distributing them into, putting them into circulation, and he was counterfeiting them. And that was not enough. That's not enough evidence to show that he was in any kind of conspiracy with those later on down the line bad actors. Now, one other point I would like to make, Your Honors, and I hope you will allow me to have some time for rebuttal, is that under the scenario that's been presented here, any person who was convicted of conspiracy to or, I'm sorry, any person who was convicted of operating a chop shop under the assumptions that the State court has made here would automatically, automatically be guilty without anything else, guilty of a conspiracy to commit a vehicle theft. And that's not just writing an element out of existence. That's writing the entire crime out of existence. And I don't think that that's the way that the, that this Court can operate and that's not the way that due process operates. Well, if you would still have to prove to a jury, the jury wouldn't have to convict. Well, I mean, my point is that, Your Honor, that what's being said here is that as a matter of law, that this is sufficient evidence and there's no different elements. Well, what we're really saying, and I guess this is the question that's the worst one for you, is that after everything you've said, the California Court of Appeals, full well knowing what California law is, looked at what the evidence was underlying this particular situation and applied it to the conspiracy that is a California situation and then said, that's enough. And you're asking me under Jackson v. Virginia to say that they didn't meet the burden. That is correct, Your Honor. And I'm glad you brought up the California state court's decision, because if you read the decision carefully, I realized this after I read it carefully, what happened is the state court unconsciously morphed the crime of conspiracy to commit vehicle theft into the crime of conspiracy to operate a chop shop. And that can be seen over and over again in that decision where they talk about the evidence adding up to Mr. Bowman's guilt of agreeing with somebody else to fix up these vehicles and make them look different. Thank you. Okay. We'll hear from the State. Good morning, Your Honors. Elizabeth Hartwig, Deputy Attorney General, on behalf of the Respondent's office, I would like to affirm the district court's denial of the habeas corpus petition, because in our view, the district court found that the state court had properly applied the standard of Jackson and offered or provided the appropriate layer of deference under this collateral Federal review of the state court decision in finding that there was sufficient evidence for a reasonable fact finder to find the defendant guilty of conspiracy of the taking or driving counts and the other counts that have been challenged in this appeal. We also are asking the court to affirm the denial of the challenge to the sentence as grossly disproportionate and a violation of the Eighth Amendment, because, again, it is our contention that the district court found that the state court had properly applied Federal authority, particularly that under Lockyer v. Andrade, and found that although the sentence was harsh, and there's no question that a 302-year sentence is extremely harsh, but under the facts of this case, given Mr. Bowman's prior record, which is extreme because of the armed robberies that he pled guilty to and because of the rape sentence to prison, because of the rapes and oral population charges against a 14-year-old – I'm sorry, a 16-year-old girl to which he also pled guilty, for which he was sentenced to another six years in state prison, and after he was put on parole for those offenses, he was again – he was convicted of separate offenses. Granted, they had gone down – he'd gone from robberies and rapes into stealing cars and other more – other property crimes, but he was sentenced again and was, in fact, on probation or parole at the time of the particular offenses at issue in this case. Given the nature of his prior record, the nature of these offenses, and the number of convictions involved, it is our view that the State court properly found the sentence, although harsh, was not a violation of the Eighth Amendment. The district court finding the sentence was harsh, but again, it was not a violation    to supervisory arbitration by the administrative commission when the State court was objectively reasonable in applying control on the United States' authority in coming to those conclusions. If the court has questions, I will be happy to answer them. I have a question about your brief. It's not on the merits. Do you have your brief with you? I do, thank you, Your Honor. As best I can tell, the facts section starts on page 9 and goes on to page 17. There's one big block quote from the Court of Appeal unpublished disposition. It's indented. Yes, Your Honor. And it's pretty much word for word except for page 16 where two paragraphs and one sentence are added that don't conform. Look at page 16. 16? Yes. Now, there's nothing – it's not false. I can't imagine any fraudulent, you know, any reason why this would be altered. But I'm just curious because it doesn't – the first paragraph, the last paragraph, and the last sentence of the second paragraphs are not in the memorandum or the unpublished disposition of the Court of Appeal as it appears in our excerpts. So I'm wondering whether there was a different version of the Court of Appeal decision or somebody added these without indicating it or do you have any idea? It's the paragraphs on pages 16 and 17. Is that what? No, it's the first paragraph on page 16. Oh, I'm sorry. The last paragraph on page 16 and the last sentence in the second paragraph on page 16. So the full paragraph that begins Phil Fulcher said he saw is not in the Court of Appeal opinion. The sentence in the next paragraph, she first saw Bowman, is not. And the last paragraph, the one that says Fulcher's neighbor, Elizabeth Reyes, saw Gruber, it's not in the – it's not where – maybe you can find out what happened there. Again, I'm not saying there's anything fraudulent or wrongful that happened. It's probably just some sort of mistake. Or perhaps there's a different version. Maybe the Court of Appeal issued two different versions. But, in fact, it doesn't – it is not in the quote. I'm hasty to say there's nothing incorrect about this. So there's – I would see no reason why somebody would add it for any improper reasons. I'm just wondering, since it purports to be a quote and it doesn't match what we have, whether maybe there is a different version of the Court of Appeal opinion or something. So why don't you look into this and maybe – I'll be happy to. Would the Court like me to respond with a letter to the Court and sort it out? Yes, just a letter. I'll be happy to do that. I'm not suggesting any impropriety at all. I'm – it's simply an oddity and I'm curious. I would like to know as well, Your Honor. I'm – I apologize for the discrepancy. I know. Since you put your name on the brief, you want to know. I – you're absolutely right. Okay. Okay. I do not know why there would be a difference there, but I'll be happy to find out and let the Court know. And if it was put in by accident, you probably want to make sure to avoid such accidents in the future. You bet. But it's possible there is a – you know, sometimes we reissue or, you know, sometimes we make corrections to our dispositions. And so there sometimes are floating around two different versions of – you know, of course, only one of which is official. But as a matter of fact, on page 17, you give a precise quote when the blockhand quotes. And so if you actually go to the excerpt of the record and look at those pages, it's not a match. I would like to know how that happened.  And I'll clarify that for the Court. Thank you. Okay. Would you like to take a minute for rebuttal? Thank you, Your Honor. Just very briefly. I would like to point out two things. And one of those things is I think in the hypotheticals we were talking about earlier, there's just been this assumption that there has to be – that there has to necessarily be an ongoing activity. And that's not the case until the crime is proven. And that's my point, is that the crime of conspiracy to commit vehicle thefts has not been proven. Thus, there's – you can't make the assumption that once the – you know, one vehicle is chopped up, that that has to be done before something else is stolen. That's absolutely not the case. There's no space constraint. There's no financial constraint. Anybody can steal a vehicle without, you know, having the vehicle before on the Richland Road property be chopped up and disguised. I think that's one point that I would like to make. And the other is I would like to draw a rough analogy to – in terms of – an example that's been useful has been in terms of drug sales. If somebody – with drug sales and purchases, if somebody's involved in drug sales and purchases and there's evidence that they're in a location with other people selling and purchasing drugs and whatnot, that's not enough to convict them of conspiracy to manufacture the drugs. I mean, that doesn't mean that they've got some kind of agreement to do the actual manufacture. That could happen somewhere else entirely. Okay. Thank you. Case Resolved. Thank you. We're adjourned. All rise. Thank you.
judges: Kozinski, Fernandez, Smith N. R.